# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JAWANN BOWIE,

        Plaintiff,

vs.

JOSEPH LOMBARDO, *et al.*,

        Defendants.

Case No.: 2:18-cv-00686-GMN-PAL

**ORDER**

Pending before the Court are the Motions to Dismiss filed by Defendants Officer G. Anton ("Anton"), Officer D. Coyne ("Coyne"), and Sheriff Joseph Lombardo ("Lombardo") (collectively "LVMPD Defendants"), (ECF No. 6), and Defendant Clark County, (ECF No. 12). Pro se Plaintiff Jawann Bowie[1] ("Plaintiff") filed Responses, (ECF Nos. 16, 18), and Defendants filed Replies, (ECF Nos. 17, 19).

For the reasons discussed below, Defendants' Motions to Dismiss are **GRANTED**.

**I.    BACKGROUND**

This case arises out of LVMDP Defendants' alleged violations of Plaintiff's constitutional rights by using unprovoked physical force on Plaintiff and subsequently arresting and charging him without justification. (*See* Compl. ¶¶ 1–12, Ex. A. to Pet. for Removal, ECF No. 1). On October 31, 2015, Plaintiff and a friend, Roosevelt Coffey ("Coffey"), were standing on the sidewalk in front of the Flamingo Hotel & Casino ("Flamingo") when they noticed an altercation between Las Vegas Metropolitan Police ("LVMPD") officers and an individual suspect ("Singleton"). (*Id.* ¶¶ 1–2). From the sidewalk, Plaintiff and Coffey started

---

[1] In light of Plaintiff's status as a pro se litigant, the Court has liberally construed his filings, holding them to a standard less stringent than that of formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

filming the interaction with their cellphones. (*Id.* ¶ 22). An unnamed LVMPD officer instructed Plaintiff and Coffey to "move back." (*Id.* ¶ 23). Plaintiff remained in place as Coffey followed the officer's instruction. (*Id.*)

As additional officers arrived at the scene, Plaintiff and Coffey verbally instructed Singleton to ask the officers whether he was being arrested or detained. (*Id.* ¶ 25). Plaintiff asked one of the officers the same question, to which an unidentified officer told Plaintiff to "move back." (*Id.* ¶¶ 27–30). After Plaintiff complied with the officer's request, a group of unidentified officers approached Coffey and pushed him against a concrete wall on the sidewalk. (*Id.* ¶ 32). When Plaintiff approached Coffey to "calm" him down, unnamed officers approached Plaintiff from behind and shoved him into a metal railing lining the sidewalk. (*Id.* ¶¶ 34–38). Plaintiff alleges that during this time, he remained calm and informed the officers that he "has done nothing wrong." (*Id.* ¶ 39).

Defendants Anton and Coyne approached Plaintiff and yelled "stop resisting," which Plaintiff claims was a fabrication intended to inflame surrounding officers' emotions. (*Id.* ¶ 40). Unnamed officers pinned Plaintiff against the metal railing contorting his arms and hands behind his person. (*Id.* ¶¶ 43–44). From behind Plaintiff, Anton secured his arm around Plaintiff's neck, with his elbow placed against Plaintiff's upper chest to form a chokehold. (*Id.* ¶ 45). Plaintiff alleges he pressed his chin against his neck to avoid losing consciousness, to which Anton remarked "don't bite me." (*Id.* ¶¶ 46–47). In response, multiple officers "forcefully maneuvered" Plaintiff to the ground, causing Plaintiff to hit his head on the metal railing and to fall chest-first. (*Id.* ¶¶ 48–49). While Plaintiff lay in defenseless position, Coyne used the "sole of his footwear to aggressively and intentionally stomp" on the back of Plaintiff's head into the concrete, drawing blood over Plaintiff's left eye. (*Id.* ¶ 50).

Anton, Coyne, and other officers took Plaintiff inside the Flamingo, placed him in a chair, and Coyne told Plaintiff to "[s]hut the fuck up!" in response to Plaintiff's question about

whether he was being "arrested or detained." (*Id.* ¶¶ 51–53). Coyne transported Plaintiff through the Flamingo to a downstairs interrogation room. (*Id.* ¶¶ 55–56). On the walk, Coyne allegedly ridiculed Plaintiff for his physical state and Plaintiff's recitation of a religious prayer. (*Id.* ¶¶ 57–58). Plaintiff was placed alone in an interrogation room, handcuffed to a bench, and left unattended for two hours. (*Id.* ¶¶ 59–61). An unnamed LVMPD sergeant interviewed Plaintiff and, "fearing additional use of [f]orce," Plaintiff recalled the day's events without a lawyer present. (*Id.* ¶¶ 61–62).

While Plaintiff waited in the interrogation room, Coyne returned to the casino's exterior when a witness, Jonathan Page, questioned him about Plaintiff's whereabouts. (*Id.* ¶ 63). Coyne allegedly falsely informed Page that Plaintiff had been booked in the metropolitan jail. (*Id.* ¶¶ 63–64). LVMPD officers also allegedly refused to answer Plaintiff's family and friends' questions about Plaintiff's status and location. (*Id.* ¶ 68).

After spending three hours in the interrogation room, Coyne formally notified Plaintiff that he was being arrested but refused to specify the reason. (*Id.* ¶¶ 65–66). Plaintiff was transferred to the Clark County Jail where he received a medical evaluation. (*Id.* ¶¶ 69–70). Plaintiff alleges that LVMPD medical staff were "falsely notified" that Plaintiff had been involved in a physical fight with another person wearing a "green shirt," presumably Coffey. (*Id.* ¶ 71). Plaintiff further claims that LVMPD medical staff intentionally misdiagnosed his eye injury as a minor contusion and disregarded Plaintiff's complaints about his painful headache. (*Id.* ¶¶ 72–73).

After the examination, Plaintiff was in the jail's booking area when he started to feel weak and signaled unnamed LVMPD officers for assistance. (*Id.* ¶¶ 74–77). The officers ignored Plaintiff's requests for assistance but ultimately transported Plaintiff to a nearby hospital. (*Id.* ¶ 80). Upon Plaintiff's arrival, he observed unnamed officers "jovially speaking with attending medical staff regarding [Plaintiff's] medical state." (*Id.* ¶ 81). After hospital

staff spoke "discouraging words" to Plaintiff, Plaintiff refused further medical attention and was transported back to jail for booking. (*Id.* ¶¶ 82–83). At the jail, LVMPD medical staff made multiple attempts to give Plaintiff a tetanus shot, which Plaintiff refused. (*Id.* ¶ 84).

Plaintiff spent the night in jail, posted bond the next day, and returned to his home in Los Angeles. (*Id.* ¶¶ 85–86). A day after returning, Plaintiff was diagnosed with a grade 2 concussion. (*Id.* ¶ 87). Plaintiff was ultimately charged with resisting arrest, a charge that was subsequently dismissed. (*Id.* ¶ 10). Clark County, since the arrest, has refused Plaintiff's request to send LVMPD's police report to his retained counsel. (*Id.* ¶ 11). According to the Complaint, Plaintiff's is still suffering from the post-effects of his concussion, requiring additional hospitalization and causing Plaintiff lost wages due to time off from work. (*Id.* ¶¶ 7–9).

Plaintiff filed his Complaint on December 8, 2017, asserting the following claims against Defendants Anton and Coyne in their official capacities: (1) Fourth Amendment excessive force; (2) First Amendment retaliation; and (3) malicious prosecution. (*See* Compl. ¶¶ 88–144, ECF No. 1). Plaintiff also brings a § 1983 municipal liability claim against Lombardo and Clark County. (*See id.* ¶¶ 145–160).

## II. <u>LEGAL STANDARD</u>

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III. DISCUSSION

LVMPD Defendants move to dismiss Plaintiff's Complaint on the basis that Plaintiff "has failed to allege how LVMPD policy or custom plausibly caused the injuries he alleges."

(LVMPD's Mot. to Dismiss ("MTD") 2:19–21, ECF No. 6). LVMPD Defendants further contend that because Plaintiff named the officers in their official capacities, Plaintiff's non-*Monell* claims are redundant to his *Monell* claim. (*Id.* 2:23–3:2). Clark County asserts an entitlement to dismissal because it cannot be held liable for acts of the LVMDP, "a legal entity independent of Clark County." (Clark County's MTD 2:13–17, ECF No. 12). Clark County alternatively argues that Plaintiff's § 1983 claims are time-barred by the applicable two-year limitations period. (*Id.* 2:17–22).

### A. Statute of Limitations

Defendants assert that Plaintiff's claims are untimely because the Complaint was filed outside of the applicable two-year limitations period. (Clark County's MTD 2:17–22); (LVMPD's Joinder to Clark County's MTD, ECF No. 14).

Plaintiff's claims against Defendants all arise under 42 U.S.C. § 1983 and are thus governed by Nevada's two-year statute of limitations for personal injury actions. *Knox v. Davis*, 260 F.3d 1009, 1012–13 (9th Cir. 2001) (explaining that the limitations period for § 1983 actions is determined by "the forum state's statute of limitations for personal injury actions"); NRS 11.190(4)(2) (imposing a two-year statute of limitations on personal injury actions).

From the face of the Complaint, it is apparent that Plaintiff's claims are untimely. Plaintiff's injuries giving rise to this suit occurred on October 31, 2015, and Plaintiff filed his Complaint in state court over two years later on December 8, 2017. (*See* Compl. ¶ 2). Plaintiff states that his action is timely because he initially filed his Complaint, along with his application to proceed in forma pauperis, on October 31, 2017, exactly two years after the underlying constitutional violations. (Pl.'s Resp. to LVMPD's MTD 5:14–6:10, ECF No. 16); *see Escobedo v. Applebees*, 787 F.3d 1226, 1230–34 (9th Cir. 2015) (recognizing that a complaint's filing date is the date on which the complaint was initially delivered to the clerk of

court along with an application to proceed in forma pauperis).

Because Plaintiff's state court petition and related records of Plaintiff's initial filing are not in the record, the Court cannot determine whether Plaintiff filed his Complaint within the limitations period. As discussed below, the Court nevertheless finds that Plaintiff's Complaint fails to state viable causes of action against Defendants. Therefore, the Court need not settle the statute of limitations question here. However, should Plaintiff elect to file an amended complaint, Plaintiff shall include the relevant state court filings to establish the timeliness of his claims under *Escobedo*.

### B. Clark County's Motion to Dismiss

Clark County argues that it cannot be held liable for the conduct of LVMPD officers because LVMDP is an independent legal entity over which Clark County exercises no control or supervision. (Clark County's MTD 4:5–6:18).

"A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)). To prevail on a § 1983 claim against a governmental entity, a plaintiff must prove: (1) he possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Id.*

The Court agrees that Clark County is not a proper defendant to this suit. Pursuant to NRS 280.10, the City of Las Vegas and Clark County merged their respective law enforcement agencies to create the LVMPD. NRS 280.280(4) provides that LVMPD is "responsible for the defense of any claim and for any judgment arising out of any act or omission" by "the sheriff, or any officer, employee or agent of the department, for which a political subdivision of the

State may be held responsible pursuant to NRS 41.0305 to 41.039, inclusive." In turn, NRS 280.307 vests county sheriffs with the responsibility to adopt policies, rules, regulations, and procedures for the administration of the LVMPD.

In recognition of Nevada conferring policymaking upon LVMPD and divesting such authority from Clark County, Courts in this District have held that Clark County cannot be held liable for actions or policies of LVMPD. *See, e.g.*, *Belcher-Bey v. City of Las Vegas*, No. 2:12-cv-01829-JAD-CWH, 2014 WL 1153468, at *3 (D. Nev. Mar. 20, 2014) ("For *Monell* liability purposes, the Sheriff—and not anyone within the local city or county governance—is therefore LVMPD's final policymaker as a matter of state law."); *Scott v. Las Vegas Metro. Police Dep't*, No. 2:10-cv-01900-ECR-PAL, 2011 WL 2295178, at *5 (D. Nev. June 8, 2011) ("Clark County cannot be held liable for the actions or policies of LVMPD."); *Denson v. Clark Cty.*, No. 2:10-cv-00525-RCJ-LRL, 2010 WL 3076260, at *3 (D. Nev. Aug. 4, 2010); *see also Palm v. Las Vegas Metro. Police Dep't*, 142 F.3d 444 (9th Cir. 1998) (unpublished) ("The LVMPD and the County are separate entities—the policies of the latter are not the 'moving force' behind the actions of the former.").

Here, Plaintiff mistakenly identifies Clark County as the "legal entity responsible" for the LVMPD's alleged constitutional deprivations because "its official policies, practices, and/or customs caused Plaintiff's injuries." (*See* Compl. ¶ 19). Because Clark County does not, as a matter of state law, promulgate LVMPD's policies, Plaintiff cannot show that Clark County was the moving force behind LVMDP's violation of Plaintiff's constitutional rights. Therefore, the Court grants Clark County's Motion and dismisses Plaintiff's claim against it with prejudice.

### C. LVMPD Defendants' Motion to Dismiss

LVMPD Defendants contend that Plaintiff's *Monell* claim cannot withstand judicial scrutiny because the supporting allegations are too vague and conclusory. (LVMPD's MTD

4:5–6:9, ECF No. 6). LVMPD Defendants further argue that because Plaintiff sues them in their official capacities, Plaintiff's first three causes of action are redundant to Plaintiff's *Monell* claim, which is premised upon the same constitutional violations. (*Id.* 6:12–17).

The Supreme Court has recognized that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Similarly, the Ninth Circuit has indicated that "[a]n official capacity suit against a municipal officer is equivalent to a suit against the entity. *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (citing *Graham*, 473 U.S. at 165–66).

Here, Plaintiff's claims against Anton and Coyne for Fourth Amendment excessive force, First Amendment retaliation, and Fourth Amendment malicious prosecution are coextensive with the constitutional violations making up his *Monell* claim. (*See* Compl. ¶ 148). Because Plaintiff expressly sues Anton and Coyne in their official rather than individual capacities, the Court agrees that the first three causes of action are redundant to the *Monell* claim. Therefore, the Court dismisses Plaintiff's first three causes of action without prejudice.[2]

The Court now turns to Plaintiff's remaining claim for *Monell* liability against Lombardo.

### 1. *Monell* Liability

As articulated above, a *Monell* claim requires a showing that: (1) Plaintiff possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) that this

---

[2] While Plaintiff's Complaint repeatedly states that the LVMPD Defendants are sued in their official capacities, (*see, e.g.*, Compl. ¶¶ 16–18, 89, 110, 129), Plaintiff contradictorily alleges that LVMPD officers are not entitled to qualified immunity, (*id.* ¶¶ 103, 121, 140, 152). *See Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 966 (9th Cir. 2010) ("[Q]ualified immunity covers only defendants in their individual capacities."). To the extent that Plaintiff's intent was to name LVMDP Defendants in their individual capacities, Plaintiff may clarify this in an amended complaint.

policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Dougherty*, 654 F.3d at 900.

The Court agrees with LVMPD Defendants that Plaintiff's allegations against Lombardo do not identify any specific policy or custom that caused the alleged constitutional violations. In *Dougherty*, the Ninth Circuit affirmed the district court's dismissal of a *Monell* claim because the complaint "lack[ed] any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' deemed insufficient by *Twombly*." 654 F.3d at 900 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In that case, the plaintiff's allegations consisted of the following: (1) "Defendant CITY's policies and/or customs caused the specific violations of Plaintiff's constitutional rights at issue in this case[ ]" and (2) "Defendant CITY's polices and/or customs were the moving force and/or affirmative link behind the violation of the Plaintiff's constitutional rights and injury, damage and/or harm caused thereby." *Id.* at 900. The Ninth Circuit held that these allegations failed to demonstrate that the plaintiff's "constitutional deprivation was the result of a custom or practice" of the city or that "the custom or practice was the 'moving force' behind his constitutional deprivation." *Id.* at 901.

Here, Plaintiff alleges that Lombardo: (1) "developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of [Plaintiff's] constitutional and federal rights"; (2) "created and tolerated an atmosphere of lawlessness, and [has] developed and maintained long-standing, department-wide customs, law enforcement related polices, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference"; (3) failed to adequately train and supervise subordinate officers when the need for "specialized training and supervision is so obvious"; and (4) presided over an "ongoing policy and/or practice of the Internal Affairs

Bureau of failing to investigate or appropriately handle complaints" of deliberate indifference. (Compl. ¶¶ 154–56, 160).

As in *Dougherty*, the Court finds that the first allegation lacks sufficient factual specificity as to the existence of any policy, practice, or custom. With respect to the second and third *Monell* allegations concerning failure to train, Plaintiff does not identify a deficiency or allege how the lack of training caused Plaintiff to suffer First Amendment retaliation, excessive force, or malicious prosecution. *Cf. Aguilar v. City of S. Gate*, No. 2:12-CV-10669-ODW, 2013 WL 300914, at *4 (C.D. Cal. Jan. 25, 2013) (concluding the plaintiff adequately pleaded a failure-to-train claim by alleging officers were not trained in how to deal with "an acutely distressed person with clear mental health or intoxication issues, including a possible threat of self injury or suicide," and alleging a causal connection between "the officers' actions and her son's death.").

As to Plaintiff's fourth allegation—that Lombardo oversaw a policy of insufficient investigations into the conduct of his subordinates—Plaintiff also fails to allege a connection between inadequate investigations into "ongoing deliberate indifference" and any of his specific constitutional violations he asserts. A failure to conduct adequate investigations, without any link to an underlying constitutional deprivation, is not enough to state a claim for *Monell* liability. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."); *see also Anderson v. Helzer*, No. 3:10-CV-67-ECR-VPC, 2010 WL 5102254, at *1 (D. Nev. Dec. 6, 2010), *aff'd*, 551 Fed. App'x. 636 (9th Cir. 2014) ("Plaintiff has no constitutional right to a police investigation, adequate or otherwise.").

In Plaintiffs' Response, he identifies an LVMPD policy change with respect to the department's use of lateral vascular neck restraints. (*See* Pl's Resp. to LVMPD's MTD 3:8–24,

ECF No. 16). According to Plaintiff, LVMPD's neck restraint policy was modified to comport with constitutional limitations two years *after* his arrest. (*Id.*). Similarly, Plaintiff also incorporates new allegations concerning the LVMPD Citizen's Review Board, which Plaintiff asserts reviewed his case and "found no wrongdoing" on the part of LVMPD Defendants because their actions were "within the scope of LVMPD Use of Force guidelines." (Pl.'s Resp. to LVMPD's MTD 4:11–5:7).

Preliminarily, Plaintiff's Complaint is without any allegations concerning the neck restraint policy or the Citizen's Review Board and, therefore, these practices cannot serve as a basis for denying the Motion to Dismiss. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Even if Plaintiff's Complaint identified the neck restraint and Citizen's Review Board, the allegations would be insufficient without corresponding facts demonstrating how these policies amounted to deliberate indifference and served as the moving force behind Plaintiff's constitutional injuries. As discussed below, however, Plaintiff will be permitted to amend his complaint to name proper defendants and allege additional facts.

## IV. LEAVE TO AMEND

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has "repeatedly held that 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

The Court finds that Plaintiff may be able to allege more facts in an amended complaint to establish the plausibility of his claims. Specifically, Plaintiff may be able to incorporate more facts to establish his *Monell* claim, plead more allegations to link LVMPD policies to the deprivation of his constitutional rights, and properly name as defendants individuals or entities whose inclusion in this suit would not be redundant to the *Monell* claim. Additionally, as noted above, any amended complaint shall include relevant state court filings confirming that Plaintiff's Complaint was timely filed within the two-year limitations period. Should Plaintiff elect to amend his complaint, Plaintiff shall file the amended complaint within twenty-eight (28) days of this Order's issuance. Failure to do so will result in the Court dismissing this action with prejudice.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Clark County's Motion to Dismiss, (ECF No. 12), is **GRANTED**. Plaintiff's claim for § 1983 municipal liability is **DISMISSED with prejudice** as to Clark County.

**IT IS FURTHER ORDERED** that LVMPD Defendants' Motion to Dismiss, (ECF No. 6), is **GRANTED**. Plaintiff's claims against Anton, Coyne, and Lombardo are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's amended complaint, should he choose to file one, shall be filed within twenty-eight (28) days of this Order. Failure to do so will result in the Court dismissing this action with prejudice.

**DATED** this \_\_20\_\_ day of February, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge